**GULF LIFE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Sidney M. FOLSOM, Folsom Construction Company, Randall M. Folsom and Lawanda F. Rigdon, Defendants–Appellees.**

No. 89–8534.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1990.

Jesse W. Walters, Donald W. Lee, Perry, Walters & Lippitt, Albany, Ga., for plaintiff-appellant.

David N. Rainwater, David A. Forehand, Jr., Rainwater and Christy, Cordele, Ga., for defendants-appellees.

Before TUTTLE\*, RONEY\* and HILL\*, Senior Circuit Judges.

HILL, Senior Circuit Judge:

The appellant in this case, Gulf Life Insurance Company ("Gulf") issued four $100,000 policies of whole life insurance on

\* *See* Rule 34–2(b), rules of the U.S. Court of Appeals for the Eleventh Circuit.

the life of Sidney M. Folsom, who was at that time the chief operating officer of appellee, Folsom Construction Company ("Folsom"). One policy was issue on March 5, 1974, and the other three were issued on March 4, 1977. Folsom was the owner and beneficiary of all four policies at all times pertinent to the issues involved in this case.

In June of 1981, Folsom applied to Gulf Life Insurance Company for policy "loans" on each of the four $100,000 policies. The original loan applications were made on behalf of Folsom by Sidney M. Folsom. The applications were for the maximum loan amount then available. Pursuant to Folsom's application, four checks totalling $56,530.45 were issued to Folsom Construction Company, which deposited the checks and spent the money.

In June of 1981, Sidney M. Folsom resigned, sold his stock in Folsom to his son, Randall M. Folsom, and retired. The life insurance policies remained in effect. On June 15, 1982 Randall Folsom, on behalf of the company, applied to Gulf for policy loans upon each of the four $100,000 policies. Once again, he sought to obtain the maximum amount then available. This time, four checks totalling $62,065.39 were forwarded to Folsom Construction Company.

Loans made under such life insurance policies are not actually loans in the ordinary sense. Normally, although interest accrues on the "borrowed" principal, the amount of the loan itself does not have to be repaid until the insured passes away, and the benefits are paid out under the policy. The "loan" amount is then deducted from the benefits payable.

At some point in 1983 Gulf discovered that the $62,065.39 loaned to Folsom in 1982 was $45,326.84 in excess of the loan value then available under the four life insurance policies. Gulf admits that the error in processing the second policy loans resulted from a mistake in the computer software used by Gulf to check the cash and loan values of insurance policies. The system simply failed to pick up the prior loans after the policies were reactivated

following a short lapse in the payment of premiums.

In March of 1983, Gulf Life agent Steven L. Barber and Billy C. Bussell went to Folsom Construction Company for a meeting with Randall M. Folsom, to try and persuade him to convert the four policies insuring his father's life to a different, new type of insurance. According to the testimony of Randall Folsom, he had, prior to their meeting, decided not to maintain the policies as his father was no longer involved with the business. Rather than agreeing to convert the insurance policies he inquired as to what the cash surrender amount would be should he elect to surrender the policies.

Mr. Barber called the Gulf office from Folsom Construction's office to determine the surrender value. Due to the same programming flaw that had already resulted in the excess loans, the computer erroneously indicated that the four policies had a combined cash surrender value of approximately $3,500. Although it was unknown to both Mr. Folsom and the Gulf agents at that time, in fact the policies had no cash value, and were in an overloan status.

As a result of this meeting, Mr. Folsom elected to surrender the policies. However, neither Bussell nor Barber had the appropriate surrender forms with them. The forms were executed in April of 1983. In the interim, Mr. Folsom allowed the policies to lapse.

On September 8, 1983, Gulf mailed a letter to Folsom advising the company of the fact that the previous loans exceeded the amounts available under the policy terms by $45,326.74, and requested that Folsom return the overpayment to Gulf. Folsom declined to pay Gulf Life, and demanded payment of the $3,500 surrender value it claimed was owed due to Folsom's surrender of the policy. The controversy then entered federal district court.

Gulf instituted an action for money had and received, claiming that it was entitled to the $45,326.84 that had been mistakenly paid to Folsom. Folsom filed a counterclaim seeking to recover the $3,500 which it alleged Gulf is obligated to pay because of

the cash surrender agreements executed in April of 1983.

On motion for summary judgment, the district court ruled in favor of Folsom on Gulf's claim for money had and received, and on Folsom's $3500 counterclaim. The district court found that the overpayment was caused solely by Gulf's negligence, and therefore O.C.G.A. § 13–1–13 required that Folsom be allowed to retain the overpayments.

O.C.G.A. § 13–1–13 provides that:

Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property....

Gulf appealed this decision, arguing that another Georgia Code provision, O.C.G.A. § 23–2–32(b) conflicted with the result reached by application of § 13–1–13. O.C.G.A. § 23–2–32(b) provides that "relief may be granted, even in cases of negligence by the complainant, if it appears that the other party has not been prejudiced thereby."

We agreed that there appeared to be a conflict between O.C.G.A. § 23–2–32(b) and O.C.G.A. § 13–1–13. Unable to find a Georgia case addressing or resolving this conflict, we certified the following question to the Georgia Supreme Court.

In an action for money had and received, can the plaintiff recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment?

The Supreme Court, in *Gulf Life Insurance Co. v. Folsom*, 256 Ga. 400, 349 S.E.2d 368 (1986), answered this question as follows:

In an action for money had and received, plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudice by refunding the payment—subject to a weighing of the equities between the parties by the trier of fact.

349 S.E.2d at 373.

Thus enlightened, Folsom and Gulf returned to the district court to try their case. The trial resulted in a jury verdict in favor of Folsom regarding the overloan, but the jury did not find in favor of Folsom on its counterclaim.

Gulf again brings its case to this court, seeking a reversal of the district court's decision not to grant a directed verdict, or, in the alternative, a new trial. Gulf's appeal centers on the trial court's instructions to the jury, which Gulf contends did not adequately express the law concerning an action for money had and received, contained unwarranted instructions on ambiguity and accord and satisfaction, and were generally confusing. Folsom, perfectly content with having won the second time around, adheres to a contrary position.

Had the litigants in this case elected to go to state court for a resolution of this purely state law action in the first instance, there would undoubtedly have been a final resolution by now. However, because federal courts are bound to apply the law of the appropriate state in diversity cases, Gulf's decision to come to federal court has created a long and convoluted road. Today we conclude that their journey has not yet ended. For the following reasons, we hold certain portions of the judge's instructions to be reversible error, and remand the case for a new trial.

Gulf appeals the following five issues: First, it claims that the trial court erred in failing to grant Gulf's motion for a directed verdict and Gulf's subsequent motion for a judgment notwithstanding the verdict. Second, it claims that Folsom failed to prove the existence of accord and satisfaction, and the that the trial court thus erred in giving such an instruction and in failing to grant Gulf's motion for a directed verdict on Folsom's counterclaim. Third, Gulf contends that the judge erred in instructing

the jury on the legal principal that a policy of insurance is to be construed liberally in favor of the insured, there being no evidence of any ambiguity in the policies at issue. Fourth, Gulf contends that the trial court erred in instructing the jury regarding the duty of diligence owed by Gulf concerning discovery of its erroneous payments, while refusing to similarly instruct the jury regarding Folsom's good faith. Next, Gulf claims that the trial court erred by giving an instruction based on the language of O.C.G.A. § 13-1-13, claiming that such an instruction was inappropriate and prejudicial in light of the Supreme Court's decision on the question certified to it by this court. Finally, Gulf claims that the trial court's instructions were generally confusing and prejudicial because they did not accurately, adequately, or precisely charge the law. Finally, given these various assignments of error, Gulf concludes that it was error for the trial court not to grant Gulf Life's motion for a new trial.

## ISSUE I: DIRECTED VERDICT

Gulf claims that, under the Georgia Supreme Court's answer to our certified question regarding actions for money had and received, it is impossible for Folsom to prove that it is entitled to keep the roughly $45,000 Gulf mistakenly loaned to Folsom in 1982. Essentially, Gulf contends there is no evidence of any equity in Folsom's favor that would allow a trier of fact to conclude that Gulf may not recover the sum it erroneously advanced.

While the Georgia Supreme Court opinion made clear that O.C.G.A. § 13-1-13 is in fact modified by O.C.G.A. § 23-2-32's equitable considerations, it is not immediately clear what the court may have had in mind with the qualifying statement, "subject to a weighing of the equities between the parties by the trier of fact." If the court had simply applied § 23-2-32 to § 13-1-13, then the equity component would consist of a simple examination of whether the parties who received money by mistake would be prejudiced by its return. However, the answer to this certified question *assumes* that the party returning the money would not be prejudiced. There-

fore, the phrase, "subject to the weighing of the equities," must introduce some other considerations in addition to pure prejudice.

The Supreme Court's discussion of the facts of this case shed some light on what "equities" should be considered. The court noted, "we find that initially a jury issue exists as to whether the plaintiff was negligent in relying solely on its computer, considering the facts of the current widespread use of computers...." 349 S.E.2d at 372. In addition, the court mentioned that "another jury issue generally involved in this type of action is the defendant's good faith." *Id.* The court also stated, "a further jury issue, in the process of weighing the equities, is whether the plaintiff's negligence, if any, was "that want of reasonable prudence, the absence of which would be a violation of legal duty." [Citing O.C.G.A. § 23-2-32(a)....], and continued, "this issue may be stated generally to be 'whether the circumstances have so changed that it would be inequitable to require full restitution,'" *Id.* at 372-73, quoting *Department of Administrative Services v. Pritchett*, 160 Ga.App. 294, 295, 287 S.E.2d 290 (1981).

From this discussion we discern that the equities to be considered by the jury are (1) the degree of negligence on the plaintiff's part in erroneously paying over the money, (2) the level of good faith with which the defendant acted in receiving and retaining the money, and (3) prejudice, i.e., whether the defendant's position has so changed that it would be unfair to require him to pay the money back. Essentially, what this means is that in an action for money had and received, where the plaintiff was negligent, the plaintiff is entitled to get his money back—unless the jury decides that he doesn't deserve it back or that the defendant deserves to keep it.

Under this extremely flexible equation we find it impossible to say as a matter of law that a jury could never find that Folsom is entitled to keep the money wrongfully paid by Gulf. According to the Supreme Court's ruling, the jury's determination as to the *degree* of negligence exhibited by Gulf is a relevant factor. In addi-

tion, Folsom's own diligence in determining whether the money was wrongfully paid is a relevant factor, because that concerns the issue of good faith on its part. Finally, it seems as if "weighing of the equities," allows the defendant to demonstrate some sort of lingering unfairness based on a change in its position. For example, in this case, although Randall Folsom admitted that he would have borrowed the money elsewhere had he not gotten it from the insurance company, and that he had made his mind up to let the policies go prior to the March 1983 meeting, he did not in fact surrender the policies until he was told that he would get $3500 for their surrender. Had he known, or been told, at the time, that he was expected to pay back a $45,000 debt and that the policies had no cash surrender value, he may have elected to hold on to the $400,000 of life insurance benefits payable upon the death of his elderly father by continuing to pay the premiums.

Given these facts, we hold that it was not error for the district court to refuse to enter a directed verdict or J.N.O.V.

## ISSUE II: ACCORD AND SATISFACTION

■ Gulf contends that the trial court erred in allowing the issue of accord and satisfaction to go to the jury. Folsom claimed not only that its surrender of the policies for $3500 amounted to an accord and satisfaction on the issue of the cash surrender value of the policies, it also contends that the "deal" that Randall Folsom made with agents Barber and Bussell was an accord and satisfaction of the overloan issue as well.[1]

Gulf is correct in contending that neither position has any merit. Under Georgia law:

> Accord and satisfaction occurs when the parties to an agreement, by a subsequent agreement, have satisfied the former agreement and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction of their former agreement, where

it is so expressly agreed by the parties; and, without such agreement, if the new promise is founded on a new consideration, the taking of it is a satisfaction of the former agreement.

O.C.G.A. § 13–4–101. However, the law of accord and satisfaction is qualified:

> An accord and satisfaction must be of some advantage, legal or equitable, to the creditor or it shall not have the effect of barring him from his legal rights under the original agreement.

O.C.G.A. § 13–4–102.

It has been clearly established under Georgia law that where overpayment is made due to the unilateral mistake of one party, that the doctrine of accord and satisfaction does not apply. We need look no further than the case of *Sun Federal Savings and Loan Association v. Manny*, 156 Ga.App. 807, 275 S.E.2d 661 (1980) for conclusive precedent. In that case, the client at a bank took out two loans, one for $11,500 and one for $5,000. Both were secured by a pledge of the client's passbook savings account. After two years she instructed the bank (by telephone) to close her savings account, pay the outstanding balances on the two notes, and remit the balance to her. The plaintiff bank closed the savings account, deducted the penalty for early withdrawal, paid only the $5,000 note in full, and forwarded the balance to the client. Both notes were also transmitted to the client, marked "PAID." As a result of this error, the bank failed to deduct the balance owing on the $11,500 note, which at that time was $2.170.83.

Three years later, the bank realized the mistake, and demanded return of the overpayment in an action for money had and received. Finding that accord and satisfaction did not apply, the court held:

> The plaintiff in this case never agreed to write off any portion of the loan balance to settle accounts, nor did the defendant ask the plaintiff to do so. The intention of both parties was clearly that both loans would be paid in full, and the only

---

1. While noting that the accord and satisfaction issue had been raised in this case, and that this was generally a question for the jury to resolve, the Georgia Supreme Court did not resolve the accord and satisfaction issue or address it in its response to our certified question.

reason they were not was because of unilateral mistake by the plaintiff. Accordingly, there was no accord and satisfaction. 275 S.E.2d at 662. In this case, Randall Folsom admitted that he did not want any money to which he was not entitled. He simply claimed that Gulf had struck a deal with him, agreeing to pay $3500 for the surrender of the policies, and that was that. This argument, in terms of accord and satisfaction, goes no further here than it did in *Sun Federal.* There was no benefit to the creditor; there was no agreement on account of a unilateral mistake; there was no accord and satisfaction.[2] The district court erred in allowing this legal theory to be considered by the jury, on the counterclaim and the overloan issue as well.

## ISSUE III. AMBIGUITY ISSUE

■ In instructing the jury, the court gave the following instruction:

Now, since we are talking about an insurance policy, insurance contracts, it is a cardinal principle of insurance law that a policy of insurance is to be construed literally [sic] in favor of the person who is insured and strictly against the [insurance] company because any lack of clarity or ambiguity in an insurance policy is considered the responsibility of the insurance company because it is the insurance company that drafts the policy. Now, that's a fundamental principle of insurance law. I'm not suggesting to you that there is any ambiguity in the language of the policy. I'm not suggesting to you that there is not any ambiguity. That's a question for you to decide. If there is any ambiguity, that fundamental principle may come into play depending on what you find the facts to be.

We agree with Gulf that this instruction was error. The terms of the insurance policy were not at issue in this case. Indeed, the trial was not based in any way on the language of the insurance policies, and

certainly did not turn on any alleged ambiguity in those policies.

In reviewing the trial court's instruction, this court must ensure that the instructions show "no tendency to confuse or to mislead the jury with respect to the applicable principles of law." *Andres v. Roswell–Windsor Village Apartments,* 777 F.2d 670, 673 (11th Cir.1985) quoting *Rohner, Gehrig & Company v. Capital City Bank,* 655 F.2d 571, 580 (5th Cir. Unit B 1981). In a case where no ambiguity in the insurance policy was at issue, the above instruction was an open invitation for the jury to construe any ambiguity in the facts surrounding the alleged overpayment against the insurance company. This possibility was exacerbated by the fact that the jury was instructed to "weigh the equities." Absent a dispute regarding the insurance policy itself, the instruction cast an intangible but real additional burden on Gulf Life which was not appropriate under the circumstances. Accordingly, we find this instruction to be reversible error.

## ISSUE IV. DUE DILIGENCE

■ The trial court further instructed the jury that:

In considering whether or not Gulf Life Insurance Company had knowledge of all of the facts when it made its overpayment to the defendant, I charge you the following statute of the State of Georgia. This is another Georgia law:

Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in affixing the rights to the parties.

In other words in layman's language, if a party can by exercising due care learn something, then he is charged with what he could have learned if you simply exercise due care in finding out about it.

That's what this language means, notice sufficient to exercise attention—ex-

---

**2.** Given that the jury found against Folsom on its counterclaim, it may have also concluded that there was no accord and satisfaction with respect to the cash surrender amount. However, the accord and satisfaction issue in this case was not limited to the counterclaim; Fol-

som used it as a defense on the overpayment of the loans as well. Therefore, rather than simply ruling that the accord and satisfaction instruction was harmless error, we must instruct the district court not to instruct the jury on this theory when retrying the case.

cite attention and for the party whom inquiry shall be notice of everything which is afterwards found that such inquiry might have led. Ignorance of the fact due to negligence shall be equivalent to knowledge in fixing the rights of the parties.

So if a party by reasonable diligence could have had knowledge of the truth, the law will not grant relief. Nor shall the ignorance of a fact known to the opposite party justify an inference that there has been no misplaced confidence, misrepresentation, or other fraudulent act.

This instruction clearly goes to the "degree of negligence" issue which the Georgia Supreme Court stated was one of the equities to be considered in such a case. Gulf does not object to the giving of this instruction. Instead, it objects to the fact that the trial court refused to make the instruction applicable to both Folsom and Gulf. Gulf claims, correctly, that Folsom's diligence goes directly to the question of whether Folsom acted in good faith in receiving and keeping the money. This was clearly one issue that the Supreme Court anticipated would be considered by the jury in weighing the equities. 349 S.E.2d at 372. We therefore hold that while the instruction on due diligence was not error, it was error for the district court to give it in such a way that it seemed to apply only to Gulf Life, making Folsom's good faith irrelevant.

ISSUE V. INSTRUCTION REGARDING O.C.G.A. § 13–1–13

In addition to instructing the jury on the exact words used by the Georgia Supreme Court in responding to our certified question, the court, in addition, gave as an instruction based on the language of section 13–1–13. Gulf objects to this instruction, as improperly emphasizing Folsom's position.

O.C.G.A. § 13–1–13 was one of the two statutes found in conflict by this court in certifying this case, in the first instance, to the Georgia Supreme Court. The answer to the certified question reconciled section 13–1–13 with section 23–2–32. We agree that to read section 13–1–13 as an addition-al, separate instruction was prejudicial error because it allowed Folsom's position to be addressed not once, but twice, and improperly emphasized Folsom's theory of the case.

With the exception of the above findings, we do not hold that the trial court's instructions were overall so erroneous and confusing that they did not accurately, adequately, or precisely charge the law. However, we do find that the errors enumerated above require a new trial in this case. At that point, the district court is instructed not to allow an instruction on accord and satisfaction; not to allow an instruction on construing ambiguities in insurance policies against the insurer; not to give as a separate instruction the language of O.C.G.A. § 13–1–13; and to apply any due diligence/good faith instruction equally to Gulf Life and Folsom Construction.

Accordingly, the judgment is reversed, and the case remanded to the district court for a new trial in accordance with this opinion.

REVERSED and REMANDED.